UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                               Case No.: 8:12-cr-434-VMC-AEP

EUGENE E. DAVIS

_____/

**ORDER**

This cause comes before the Court pursuant to Defendant Eugene E. Davis's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (Doc. # 136), filed on February 18, 2025. The United States of America responded on February 27, 2025. (Doc. # 140). Mr. Davis filed a reply on March 12, 2025. (Doc. # 145). At the Court's request, the parties filed supplements. (Doc. ## 147, 148). For the reasons set forth below, the Motion is granted to the extent that the Court reduces Mr. Davis's term of imprisonment to 300 months and imposes a 10 year term of supervised release.

**I.   Background**

On September 9, 2013, the Court sentenced Mr. Davis to a mandatory life term of imprisonment for conspiracy to possess with intent to distribute five kilograms or more of

1

cocaine and 280 grams or more of cocaine base. (Doc. ## 78, 82). Mr. Davis is 50 years old.[1]

Now, Mr. Davis seeks compassionate release from prison under Section 3582(c)(1)(A). (Doc. # 136). He argues that compassionate release is appropriate because his mandatory life sentence is longer than the sentence he would receive today and "is drastically longer than those of more than 88% of all other defendants sentenced in the last decade." (Doc. # 136 at 8-16). He also emphasizes his rehabilitative efforts while in prison and his family support as an "other reason" warranting compassionate release. (Id. at 17-21). The United States has responded (Doc. # 140), and Mr. Davis has replied. (Doc. # 145). The Motion is now ripe for review.

## II. Discussion

The United States argues that the Motion should be denied because Mr. Davis has not established an extraordinary and compelling reason for compassionate release, Mr. Davis is a danger to the community, and the Section 3553(a) factors weigh against a reduced sentence. (Doc. # 140). The Court disagrees.

"The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United

---

[1] This information was obtained using the Bureau of Prisons' online inmate locator. See https://www.bop.gov/inmateloc/.

2

States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010). The First Step Act of 2018 expressly permits district courts to reduce a previously imposed term of imprisonment. United States v. Jones, 962 F.3d 1290, 1297 (11th Cir. 2020). If the exhaustion requirement is satisfied, a district court may reduce a prisoner's term of imprisonment "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable," if it finds that extraordinary and compelling reasons warrant such a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). But it is the "defendant's burden to show that his circumstances warrant a sentence reduction." United States v. Alonge, No. 21-13566, 2022 WL 1135533, at *1 (11th Cir. Apr. 18, 2022).

"Following the recent amendments to the sentencing guidelines, which went into effect on November 1, 2023, there are now six extraordinary and compelling reasons justifying relief under § 1B1.13: (1) the defendant's medical circumstances, (2) advanced age, (3) family circumstances, (4) whether the defendant is a victim of abuse, (5) 'other reasons,' and (6) whether the defendant received an unusually long sentence." United States v. Allen, No. 1:09-cr-320-TCB, 2024 WL 631609, at *2 (N.D. Ga. Feb. 12, 2024). Regarding the final category, § 1B1.13(b)(6) states: "If a defendant

3

received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6).

In his Motion, Mr. Davis relies on the "unusually long sentence" category of extraordinary and compelling circumstances. (Doc. # 136 at 8-16). As a preliminary matter, the Court rejects the government's position that USSG §1B1.13(b)(6) "is invalid because it conflicts with [S]ection 3582(c)(1)(A) and exceeds the Sentencing Commission's statutory authority." (Doc. # 140 at 6). As other courts have held, "the amendment to § 1B1.13 was within the Commission's power." United States v. Allen, No. 2:03-cr-74-JES-NPM, 2024 WL 4052904, at *3 (M.D. Fla. Sept. 5, 2024); see also United States v. Allen, 717 F. Supp. 3d 1308, 1315 (N.D. Ga. 2024) ("Because the Eleventh Circuit has never held that nonretroactive changes cannot be extraordinary and compelling

4

reasons, this Court can accept § 1B1.13(b)(6)'s validity and applicability."); United States v. Ware, 720 F. Supp. 3d 1351, 1362 (N.D. Ga. 2024) ("[T]he Sentencing Commission lawfully exercised its authority in defining extraordinary and compelling reasons for compassionate release in Section 1B1.13(b)(6)'s amendment for unusually long sentences. Congress's delegation to the Sentencing Commission included ambiguous terms — i.e., extraordinary and compelling — and it reasonably interpreted these terms to include unusually long sentences which can be assessed in the light of nonretroactive changes in law."). "To hold that courts cannot consider nonretroactive changes to sentencing laws as extraordinary or compelling reasons would require courts to ignore the policy statement that Congress explicitly directed the Commission to create." Allen, 717 F. Supp. 3d at 1315. Thus, the Court will consider the merits of Mr. Davis's argument under § 1B1.13(b)(6).

Mr. Davis contends that his sentence is unusually long and presents a gross disparity with the sentence that would be imposed today. He emphasizes that he "would not be subjected [to] a mandatory minimum of life if sentenced under today's laws," but would rather "face a 15-year mandatory minimum." (Doc. # 136 at 14). Mr. Davis correctly notes that,

as "of January 2024, only 2.6% of individuals incarcerated in federal prison were serving life sentences." (Doc. # 145 at 13) (citing U.S. Sent'g Comm'n, Quick Facts, <u>Individuals in the Federal Bureau of Prisons</u>, available at: http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/BOP_January2024.pdf (last visited March 13, 2025)).

The parties disagree over what Mr. Davis's sentencing guidelines range would be if he were sentenced today. While both parties agree the mandatory minimum would be 15 years (Doc. ## 147, 148), Mr. Davis contends that his guidelines range would be 324-405 months' imprisonment with 10 years of supervised release to follow. (Doc. # 148). For its part, the United States maintains that Mr. Davis's guidelines range would be 360 months to life. (Doc. # 140 at 12; Doc. # 147). Thus, the United States reasons, Mr. Davis's life sentence is not unusually long or "grossly disproportionate" to the sentence he would receive today because it is within his supposed guidelines range if he were sentenced today. (Doc. # 140 at 12).

The Court disagrees. It would be exceedingly rare for this Court to impose a life sentence for a drug crime today, regardless of the advisory guidelines range. Rather, given

6

that Mr. Davis would not be subject to a mandatory life sentence if he were sentenced today and a life sentence would not be imposed today by this Court, Mr. Davis has established an extraordinary and compelling reason for compassionate release. See United States v. Hyppolite, No. 2:11-cr-97-JES-NPM, 2024 WL 5100365, at *4 (M.D. Fla. Aug. 7, 2024) ("It is undisputed that defendant was sentenced to the unusually long sentence of a life sentence on Count One. . . . Defendant has served over 10 years of the sentence, and disparity exists between the imposed sentence of mandatory life compared to today's range of up to life that could be imposed."), decision clarified on reconsideration, No. 2:11-cr-97-JES-NPM, 2024 WL 5100360 (M.D. Fla. Sept. 12, 2024); Allen, 717 F. Supp. 3d at 1317 ("In light of the rarity of life sentences, the Court finds that Allen's sentence was unusually long."); United States v. Padgett, 713 F. Supp. 3d 1223, 1230 (N.D. Fla. 2024) (finding that defendant who was sentenced to mandatory life based on drug and gun charges had "presented extraordinary and compelling reasons for a sentence reduction"); United States v. Preux, No. 5:06-cr-29-JA-PRL, 2024 WL 4692033, at *4 (M.D. Fla. Nov. 6, 2024) (granting compassionate release where, "if [defendant] were sentenced today, he would be subject to a mandatory minimum sentence of fifteen years or

7

twenty-five years (depending on the number of prior convictions counted), rather than life"); <u>United States v. Eads</u>, No. 96-CR-203-WJM, 2024 WL 4201605, at *4 (D. Colo. Sept. 16, 2024) ("In the Court's view, there is a gross disparity between a life sentence and a 55-year sentence in this case.").

Additionally, before granting compassionate release, the Court must determine that the defendant is not a danger to any other person or the community, U.S.S.G. § 1B1.13(2), and that the 18 U.S.C. § 3553(a) factors favor early release. Notably, Section 3553(a) requires the imposition of a sentence that, among other things, protects the public, reflects the seriousness of the crime, considers the history and characteristics of the defendant, and the nature and circumstances of the offense. 18 U.S.C. § 3553(a).

Here, the Section 3553(a) factors weigh in favor of a sentence reduction. A life sentence is more than necessary to protect the public and promote respect for the law under the circumstances. While Mr. Davis had two prior drug convictions when he was 15 and 17 (Doc. # 136 at 11), this prior criminal history — involving crimes committed while an adolescent — does not justify a life sentence.

Furthermore, since his incarceration, Mr. Davis — who is now 50 years old — has engaged in substantial rehabilitative efforts. He is considered a low recidivism risk by the Bureau of Prisons. (Doc. # 136-3 at 1). Mr. Davis has obtained his GED and participated in numerous educational and vocational programs. (Doc. # 136 at 18; Doc. # 136-3 at 3); see also Preux, 2024 WL 4692033, at *5 (granting compassionate release and noting that defendant "has gained 'employable skills' by completing over thirty BOP courses, including drug education"). The Court is impressed by Mr. Davis's completion of the Challenge Program, "a 500-hour minimum intensive mental health and substance abuse program, focused on addressing criminal thought and behavioral patterns," and his participation as a mentor to other inmates. (Doc. # 136-3 at 4, 13-24); see also United States v. Vanholten, No. 3:12-cr-96-RBD-MCR, 2023 WL 8357739, at *3 (M.D. Fla. Dec. 1, 2023) (granting compassionate release where, "[e]ven without a scheduled release date and facing life in prison, [defendant had] nevertheless completed a substantial number of rehabilitative exercises and educational classes regarding drug abuse, anger management, personal finance, and health and nutrition"). Given his criminal history, years of incarceration, and rehabilitation in prison, the Court does

9

not consider Mr. Davis a danger to the community at this time of his life. Thus, some reduction of his life sentence is warranted.

The question is how long the sentence should be reduced. Mr. Davis requests a sentence of time served, such that he will have served only approximately 12 years — less than the current mandatory minimum of 15 years. (Doc. # 136 at 27). A sentence of time-served, however, does not properly reflect the seriousness of Mr. Davis's crime or promote respect for the law. Mr. Davis's crime was a serious one that warrants a long incarcerative sentence: Mr. Davis trafficked significant quantities of cocaine as part of a drug conspiracy. (Doc. # 140 at 3). The Court is also troubled by the threatening social media posts Mr. Davis made while pending trial, such as sharing the names of the government's witnesses on social media. (Id. at 4-5). Nor has Mr. Davis's behavior in prison been perfect, despite his trend toward rehabilitation. Specifically, Mr. Davis "was disciplined by the Bureau of Prisons for possessing a dangerous weapon in 2016, and fighting with another person in 2018." (Id. at 6-7).

Balancing all these considerations, along with the need to promote respect for the law and deter future crimes, the Court determines that a sentence of 300 months' incarceration

10

is sufficient but not greater than necessary to achieve the purposes of sentencing. Again, Mr. Davis calculated that, if sentenced today, his sentencing guidelines range would be 324-405 months. (Doc. # 136 at 12; Doc. # 148). A moderate downward variance from that range — to 300 months or 25 years — is the appropriate sentence here. The term of supervised release to follow shall be 10 years, with the standard conditions of supervised release applied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Eugene E. Davis's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (Doc. # 136) is **GRANTED** in part.

(2) The term of imprisonment is reduced to 300 months. The term of supervised release is 120 months.

(3) The Clerk is directed to enter an amended judgment accordingly.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 25th day of March, 2025.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE